573 So.2d 505 (1990)
Emile J. KENNEDY, et al.
v.
SANCO LOUISIANA, INC.
No. 89-CA-2267.
Court of Appeal of Louisiana, Fourth Circuit.
September 25, 1990.
Rehearing Denied February 21, 1991.
*506 Eric Oliver Person, New Orleans, for appellants.
Steven K. Faulkner, Jr., Metairie, for appellee.
Before GARRISON, KLEES and CIACCIO, JJ.
CIACCIO, Judge.
Sixteen plaintiffs filed a declaratory action against defendant corporation, Sanco Louisiana, Inc., seeking a judgment declaring that Sanco held no interest in certain property owned by them located in Orleans Parish. Plaintiffs also sought damages for Sanco's alleged clouding of their title by the registering in the conveyance office of certain agreements between the parties. Sanco filed a reconventional demand alleging that the money it paid as a deposit and monies paid for extensions of the closing date of the act of sale and sums expended in preparation to develop the property should be refunded.
The parties tried the matter before a commissioner who prepared a report and recommended reasons for judgment, to which plaintiffs filed an exception. After reviewing the trial transcript, the commissioner's report and recommendation, the trial judge rendered judgment in favor of plaintiffs and against Sanco declaring that the inscriptions in the conveyance office did not act as a cloud on plaintiffs' title to the property and that Sanco had no interest in the property. The judgment further ordered that $7,000.00 deposited in the registry of the court be returned to Sanco and that plaintiffs refund to Sanco $46,783.65, the monies Sanco paid them for extensions of the closing date of the act of sale of the property. Plaintiffs appeal from that part of the judgment ordering them to refund Sanco the monies paid for the extension agreements.
On November 8, 1983, plaintiffs entered into an agreement with Sanco, wherein Sanco agreed to purchase certain real estate owned by plaintiffs described as lots E2-B, E3-B, F1-B, F2-B, G1-B, G2-B, X-B and E-1B, Pecan Park, Third Municipal District in Orleans Parish. Subsequently, over a period of time, the parties entered into agreements to extend the closing date of the act of sale wherein Sanco paid the respective plaintiffs various sums totalling $46,783.65 as consideration for the extensions. Upon execution of the agreement to purchase and sell, Sanco deposited $7000.00 with the real estate agents from Latter & Blum, Inc. and Merrill Lynch Realty, Inc., which was later deposited in the registry of the court. Sanco also spent $7290.64 in engineering expenses, permits, surveys and other costs associated with obtaining approval for the development of the property.
Following the expiration of the extension agreements, Sanco filed in the conveyance office copies of the agreements. After the last extension of time for passing the act of sale expired, plaintiffs executed an option with a prospective purchaser who demanded that the inscriptions in the conveyance records be cancelled. Sanco refused to do so and plaintiff filed this suit for declaratory judgment.
The commissioner, in preparing his report later adopted by the trial judge, made the following findings of fact regarding the extension agreements entered into between the parties:
Plaintiffs knew that the requests for extensions of time to pass the act of sale were made because of title and finance problems and that these problems were the sole reason which prevented the occurrence of the cause for the original agreement to take place, viz., the transfer of title to defendant. The sums given to plaintiffs or the extensions were given in anticipation of a final consummation of the sale pursuant to the original agreement of November 8, 1983. The sale was never consummated and hence defendant is entitled to be reimbursed the sums paid for the extensions of the date of the act of sale.
An examination of the language of the extension agreements discloses that they fail to provide for the disposition of the monies paid should there be no act of sale. But implied therein was the original cause of the contract, or the intention *507 of the parties when they executed the original agreement, to wit, the completion of the sale by the transfer of title to the defendant corporation. And in anticipation of acquiring title and relying upon this becoming an actuality, the defendant paid to plaintiffs a total of $46,783.65 for the date of the sale to be extended. And if the extension resulted in a sale taking place defendant was then willing to make no claims with respect to getting a credit towards the purchase price for the sums paid to plaintiffs. The extension agreement clearly stated "This payment is made only as an inducement for the Seller to extend the time for passing the act of sale."
After reviewing the testimony and evidence in the record, we find these findings are partly in error.
Law and the jurisprudence provide that although courts are bound to give legal effect to contracts according to the true intent of the parties to the contract, that intent must be determined by the words of the contract when these are clear and explicit and lead to no absurd consequences. Massachusetts Mutual Life Insurance Company v. Nails, 549 So.2d 826 (La.1989); Baber v. Hoffer, 430 So.2d 220 (La.App. 4th Cir.1983); LSA-C.C. art. 2046. Moreover, the rule of strict construction does not authorize perversion of language or the creation of ambiguity where none exists, and does not authorize courts to make a new contract where the language employed expresses the true intent of the parties. J.M. Brown Construction Company v. D & M Mechanical Contractors, Inc., 222 So.2d 93 (La.App. 1st Cir.1969).
In this case, the extension agreements prepared by Sanco and signed by its representative, Jim Howard, and the respective plaintiffs, expressly provides:
The sum of _________ as referenced above shall be non-refundable and is not to be construed as a deposit, option fee or credit against the sales price of the subject property. This payment is made only as an inducement for the Seller to extend the time for passing the Act of Sale and will be made promptly upon the completion of the condition as specified in paragraph (1) hereinabove. (Emphasis added)
By the express wording of the agreements, Sanco paid the sums only as an inducement for the plaintiffs to extend the time for passing the act of sale. The clear language of the terms of the extension agreements makes no provisions for the return of the monies paid by Sanco nor does it contain any condition upon which the payment of the monies for the extensions would be forfeited by the plaintiff sellers. The terms are clear and unambiguous, not in violation of statutory law or public policy. For these reasons we find that the judge was clearly wrong in ordering plaintiffs to refund the monies Sanco paid them for the extension agreements.
Sanco contends and the trial judge found that the extension agreements, by inference, included a condition that payment was predicated upon Sanco, as purchaser, taking title to the property. We disagree.
Our review of the record in this matter shows there is no evidence to support the lower court's finding that the extension agreements were predicated upon the merchantability of the title to the property. Jim Howard testified on behalf of Sanco. According to him, he was aware that the final act of sale of the property did not take place because he could not secure financing and there were questions concerning whether there was a cloud on the title to the property. He sought the extensions of the act of sale knowing these problems existed but assumed they would be resolved. Mr. Howard testified that he was aware of the clear language of the extension agreements when he signed them and that payments Sanco made to plaintiffs in consideration for the extensions were non-refundable. There is absolutely no other evidence in the record, testimonial or otherwise, which indicates that the monies Sanco paid to plaintiffs was subject to any condition relative to merchantability of the title to the property, financing, final consummation of the sale or for any other reason.
*508 LSA-C.C. art. 1848 provides that testimonial or other evidence may not be admitted to negate or vary the contents of any authentic act or an act under private signature, but in the interest of justice, such evidence may be admitted to prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified by a subsequent and valid oral agreement. In order to vary the clear, expressed terms of the extension agreements Sanco would have had to allege and present evidence of fraud, error, duress or a mistake of some kind. Sanco's answer to plaintiffs' original petition and its third party demand contain no such allegations nor has Sanco offered any evidence as proof of a vice of consent. Absent any allegation of error, mistake or vice of consent and absent any evidence of same in the record, it was error for the trial court to reform the agreement by reading into it, by inference, language that provided for a refund of the extension payments if certain conditions were not met.
Lastly, Sanco argues that because the extension agreements failed to provide for the disposition of the monies paid should a final sale not have taken place, it must be assumed the parties intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in the contract, citing LSA-C.C. art. 2054. We disagree.
When there is doubt which cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished the text. LSA-C.C. art. 2056. As the drafter of the extension agreements, Sanco could have provided in the agreements that the sums it paid plaintiffs were refundable if the final act of sale did not take place because the title was not merchantable or for any other reason. The sellers would have had the right to grant the extensions subject to those conditions or to refuse to agree to those terms. If the absence of such a provision created any doubt or ambiguity as to the meaning of the agreements, and we find it does not, the doubt or ambiguity must be construed against the party who prepared it, in this case, Sanco.
Where there is credible evidence before the trier of fact which furnishes a reasonable factual basis for the trial court's conclusion, an appellate court should not reverse unless the trial court is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Based on the evidence before us and for the foregoing reasons, we find the trial judge was clearly wrong by reading into the extension agreements a cause for refund of the non-refundable payments. Accordingly, that part of the judgment in favor of Sanco Louisiana, Inc., as plaintiff-in-reconvention, and against defendants-in-reconvention in the total sum of $46, 783.65 is hereby reversed. In all other respects, the judgment of the trial court is affirmed.
REVERSED IN PART, AFFIRMED IN PART.